**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SimpleAir, Inc., | Civil Action No. 2:14-cv-00011-JRG |
|         Plaintiff, | **Jury Demanded** |
| vs. | |
| Google Inc., et al., | |
|         Defendants. | |
| SimpleAir, Inc., | Civil Action No. 2:13-cv-00937-JRG |
|         Plaintiff, | **Jury Demanded** |
| vs. | |
| Google Inc., | |
|         Defendant. | |

**SimpleAir, Inc.'s Reply Claim Construction Brief**

## Table of Contents

I.     "an information source" ...................................................................................... 1

II.     "data"/ "generating data"/ "data from an information source" ........................... 1

III.     "a central broadcast server" ............................................................................... 3

IV.     "process data [with/using] at least one parser" .................................................. 5

V.     "an information gateway" ................................................................................... 6

VI.     "a transmission gateway" ................................................................................... 7

VII.     "communicatively coupled" ............................................................................... 9

VIII.     "receivers" ....................................................................................................... 10

IX.     "whether said devices are online or offline from a data channel associated with [the/each] remote computing device" ............................................................... 11

X.     "a viewer" ......................................................................................................... 12

XI.     "subscriber database" ...................................................................................... 13

XII.     prosecution history disclaimer ......................................................................... 13

## <u>Table of Authorities</u>

**Cases**

*911EP v. Whelen Eng'g Co.*,
   512 F. Supp. 2d 713 (E.D. Tex. 2007).................................................................. 14

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014). ............................................................................. 6

*Free Motion Fitness, Inc. v. Cybex Int'l*,
   423 F.3d 1343 (Fed. Cir. 2005) ............................................................................... 2

*Golden Bridge Tech., Inc. v. Apple Inc.*,
   758 F.3d 1362 (Fed. Cir. 2014) ............................................................................. 14

*In re Cuozzo Speed Technologies, LLC*,
   2015 WL 448667 (Fed. Cir. Feb. 4, 2015) ............................................................ 14

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
   381 F.3d 1111 (Fed. Cir. 2004) ............................................................................. 14

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) ............................................................................... 8

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
   382 F.3d 1354 (Fed. Cir. 2004) ............................................................................... 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014)............................................................................................. 8

*Cohesive Techs., Inc. v. Waters Corp.*,
   543 F.3d 1351 (Fed. Cir. 2008) ............................................................................... 8

*Starhome GmbH v. AT & T Mobility LLC*,
   743 F.3d 849 (Fed. Cir. 2014) ................................................................... 1, 2, 4, 7

*Williamson v. Citrix Online, LLC*,
   770 F.3d 1371 (Fed. Cir. 2014) ............................................................................... 6

**Index of Exhibits**

| Exhibit # | Description of Exhibit |
|---|---|
| 34 | SimpleAir's preliminary response to Google's Petition for *Inter Partes* Review of '279 Patent (10'29'14) |
| 35 | SimpleAir's preliminary response to Google's Petition for *Inter Partes* Review of '154 Patent (10'29'14) |
| 36 | SimpleAir's preliminary response to Google's Petition for Covered Business Method Review of '279 Patent (10'29'14) |
| 37 | SimpleAir's preliminary response to Google's Petition for Covered Business Method Review of '154 Patent (10'29'14) |
| 38 | Excerpts from March 9, 2015 deposition of Dr. Stephen B. Wicker |
| 39 | Declaration of Prior Invention regarding '433 Patent |

**Index of Appendices**

| Appendix # | Description of Appendix |
|---|---|
| 1 | Excerpts of dictionaries relied upon by SimpleAir |

**Note on Abbreviations**

This reply uses the following abbreviations:

- SA[page number]: SimpleAir's Opening Claim Construction Brief (Dkt. #68)

- G[page number]: Google's Responsive Claim Construction Brief (Dkt. #76)

iii

I.      **"an information source"**[1]

      ***"including all content providers on the Internet"***: Google seeks to add the phrase "including all content providers on the Internet."  Google asserts that this phrase clarifies that "the '***content providers*** on the Internet'—not the medium—constitute an 'information source.'" G1 (emphasis Google's).  Google's expert, however, revealed that Google actually intends to apply this phrase to have the opposite effect: it "allows for the Internet itself to be an information source, where as SimpleAir's [construction] does not."  Ex. 38 (Wicker depo) at 150:3-14.  The Court should reject Google's backdoor attempt to revive this previously rejected argument.  *See* ex. 4 (*Google I Markman* Order) at 13-14.

      ***"that provide data to the central broadcast server"***: Both parties' proposed constructions use identical language requiring content or on-line service providers "that provide data to the central broadcast server."  Google's expert declaration also included that exact requirement. Dkt. 76-4 (Wicker decl.) at 11-12.  In a footnote, however, Google, asserts the opposite view. G2 n.2.  Google's expert confirmed that Google planned to argue that "a content or online service provider could meet the definition of an information source even though it never provides data to the central broadcast server."  Ex. 38 (Wicker depo) 135:13-138:16.  We request that the Court's order expressly address this footnote and foreclose Google from arguing that an information source may be a provider that does not provide data to the central broadcast server.

II.     **"data"/ "generating data"/ "data from an information source"**

     <u>**data**</u>: The dispute is whether "data" includes any information suitable for digital transmission or computer use (SimpleAir) or is limited to the content of a message (Google).

      "We indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning."  *Starhome GmbH v. AT & T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014).

---

[1] This brief is 14 pages long pursuant to our unopposed to exceed the page limit.  Dkt. 80.

"There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id*. 856 (internal quotes omitted).

Google does not assert that the ordinary meaning of "data" in this context (or any context) is limited to the "content of a message."[2]  Google's fact witnesses, prior validity expert, and current claim construction expert each admit that the ordinary meaning of "data" includes any type of digital information suitable for digital transmission and computer use, and is not limited to the "content of a message."[3] *See* SA6-7; ex. 38 (Wicker depo) at 152:6-11, 155:20-156:6, 158:2-6.  Google seeks to limit the meaning of "data" to the "content of a message" based on embodiments.  G2-3.  But claims are not limited by embodiments.[4] As Google's expert admits, the specification has no disavowal or definition that would limit "data."  Ex. 38 (Wicker depo) at 168:2-17.

**generating data / data from an information source**:  In our opening brief, we quoted objective references showing that, in the relevant art, "generate" means "produce" and "produce"

---

[2] Dictionaries should be consulted for ordinary meaning because they are "an unbiased source accessible to the public in advance of litigation." *Phillips v. AWH Corp*., 415 F.3d 1303, 1322 (Fed. Cir. 2005) (en banc). Google asserts that it is improper to consult the specification for context and then select the ordinary meaning for that context as found in a dictionary, because that was the *Texas Digital* approach rejected in *Phillips*.  G6-7& n8. Google is wrong.  The *Texas Digital* approach was that "words often have multiple dictionary meanings" and a claim term should be "construed to encompass all such consistent meanings," rather than the one ordinary meaning appropriate for the context.  *Phillips*, 415 F.3d at 1319.

"Under *Phillips*, the rule that a court will give a claim term the full range of its ordinary meaning, does not mean that the term will presumptively receive its broadest dictionary definition or the aggregate of multiple dictionary definitions.  Rather, in those circumstances where reference to dictionaries is appropriate, the task is to scrutinize the intrinsic evidence in order to determine the most appropriate definition." *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1348-49 (Fed. Cir. 2005) (internal quotes and cites omitted).  To support its argument, Google provides a misleading short quote from *Phillips*.  G6-7.  The part of the sentence omitted by Google makes clear that the court was rejecting the use of the specification to see if "fewer than all the dictionary definitions apply."  415 F.3d at 1320.

[3] The patent itself uses the word "data" in this manner.  SA6 (quoting written description); ex. 38 (Wicker depo) at 159:10-162:6 (admitting that the patents use "data" to refer to data other than the content of the message).

[4] Moreover, Google is wrong that the embodiments limit "data" to the content of a message.  For example, contrary to Google's suggestion, but as its expert admitted during deposition, what figure 8 refers to as "the data portion of the packet"—highlighted and underlined in red in Google's brief, p.6—actually includes *all* of the information in the information notification data blocks, including all of the header information.  Ex. 38 (Wicker depo) at 180:9-181:24; *see* 175:11-177:5, 177:21-24.

includes combining items created elsewhere as well as creating items out of nothing.  SA8-9.

Google does not dispute that "produce" includes creating as well as combining, and Google's

expert admits it.  Ex. 38 at 183:12-19.  Instead, Google asserts that "generate" is narrower than

"produce."  But Google's only support for this assertion is the declaration of its expert, who

cannot point to any intrinsic or extrinsic evidence for support.  Ex. 38 192:8-199:17.  And

Google provides no response to the objective references we presented.

Google argues that SimpleAir's construction of "generate" would make the "generating

data" element "redundant" of the "data from an information source" limitation.  G7-8.  This is

false.  Because "data from an information source" is recited only in the preamble, it does not

impose any method step.  Therefore, "generating data," is not redundant because it is the claim

language that requires an accused method to perform the step of producing data by creating or

combining it at the information source (rather than, *e.g.*, merely "transmitting" data from an

information source).

## III.    "a central broadcast server"

*transmit to all/a plurality*: Google proposed its construction so it could argue that the

same data must be transmitted to "multiple remote computing devices" (as it did in *Google I*).

We rebutted this in our opening brief.  SA12-13.  In response, Google abandons that argument.

Google shifts direction and—without altering its proposed construction—argues that the

central broadcast server must transmit data to "all available receivers."  G9.  This argument is

incorrect too.  In fact, the specification expressly refutes it and confirms that the central

broadcast server can transmit to "a subset" or even just "to one user": [I]nformation can be

transmitted from a central broadcast server 34 wirelessly to everyone (broadcast), to a subset of

users (narrow cast) or to one user (pointcast).  '279 at 6:25-28.  Googles' three arguments fail.

*Arg. 1*: The patent defines "broadcast" to mean "transmit to all."  G9-10.

This is false, as demonstrated by the above specification quote, and as the *AWS* court concluded when presented with this identical argument. Ex. 5 at 12-13.

**_Arg. 2_**: The central broadcast server must transmit to all because the prosecution history limited the central broadcast server to one that "broadcasts" to all. G10-12.

The claims at issue in the prosecution history quoted by Google (claims 156-177) did not include the term "central broadcast server"; nor was this term mentioned in the prosecution history statements cited by Google. Dkt. 76-2, 21-25. Thus, there was no disclaimer related to "central broadcast server" (much less a clear and unambiguous one). *Starhome*, 743 F.3d 857. [5]

**_Arg. 3_**: "[P]ointcasting by the central broadcast server would render the invention superfluous because if the broadcast server can itself pointcast to receivers, then there is no need for the receivers to filter a broadcast based on addresses." G12.

This reasoning is erroneous. The claims do not recite "filtering" and so nothing in the claims could be rendered superfluous by pointcast transmissions. In addition, it can be desirable to have a system that both filters and pointcasts. For example, updates about sports scores might be better suited for transmission to all followed by filtering (for example, by team); while personal emails might be better suited for transmission to a single recipient.

Thus, the Court should adopt SimpleAir's construction. In addition, to foreclose Google from later raising the "same data/multiple receivers" argument, the Court should expressly rule that the central broadcast server does not need to transmit the same data to multiple receivers. [6]

**_"capable of receiving data from a plurality of information sources"_**: Google's only response to our arguments (SA10-11) is that the asserted claims in this case recite a central

---

[5] Moreover, the cited prosecution history passages do not use the word "broadcast" to mean "transmitting to all" as Google suggests. To the contrary, the passages use "broadcast" to mean a push transmission initiated by the server, rather than a pull transmission in response to a user request. Dkt. 76-2 at 15 ("The present invention generates URLs at a *server* which are then broadcast to plurality of receivers. In contrast, Rossman requires a *user* to generate URL's which then must be sent [sic] it to a server" (italics in original)). A server that "broadcasts"—*i.e.* initiates push transmissions—need not transmit to all.

[6] Google makes several arguments that the central broadcast server must transmit data to a plurality of devices. This is true, and already required by the claims (which recite methods and systems of transmitting data to remote computing devices plural). But this does not mean that the central broadcast server must transmit to all, or that it must transmit the same data to a plurality. SA12-13. Transmitting different data to a plurality suffices.

broadcast server "<u>configured</u> to receive data from at least one information source."  G12.  This

does not rebut our arguments.  A device can be (a) capable of doing something but (b) not

configured to do so.  Accordingly, that the claimed central broadcast server must be <u>configured</u>

to receive data from only one information source is perfectly consistent with the requirement that

central broadcast servers be <u>capable</u> of receiving data from a plurality of information sources.

## IV.  "process data [with/using] at least one parser"

*"one or more program" v. "one or more programs, functions, or routines"*: The

ordinary meaning of "parser" includes routines, portions of programs, and programs.  S14

(quoting dictionaries).  Google does not rebut this.  Google argues that within the claims,

"parser" refers to a separate program because the specification "describes the parsers as separate

programs."  G14.  Contrary to Google's assertion, the specification does not describe or depict a

parser as a separate program (as contrasted with being part of a larger program).  *See* Figure 2,

'279, 8:12-22.  Moreover, the claims are not limited to specification embodiments.

Google also asserts that the Courts' prior construction "read[s] the 'parser' out of the

claims."  G15.  This is false.  As Google's expert admits, "one can receive data without in any

way breaking or dividing the data up into components" (ex. 38 at 275:12-16), which meets the

"receiving data from an information source" limitation but not the additional "parsing" one.

*"correspond to the content of the message"*: As we explain in our opening brief, the

Court rejected Google's attempt to limit the claimed parsers to embodiments in the last case, and

should do so again.  *See* ex. 38 (Wicker depo) at 278:20-24 (admitting that this limitation is

supported only by embodiments).  Google asserts that "the parsing limitations in this case

are…materially different" from those in the '914 patent, "rendering the Court's prior ruling

inapplicable."  G13.  But none of the differences in the claims limit the "parsers" to ones that

"correspond to the content of the message."  That is why Google once again has to rely on the

same embodiments, rather than the claim language, to support its argument.  *See* G13-14.

## V.    "an information gateway"

*whole phrase*: Google cites means-plus-function cases and argues that "information

gateway" is indefinite because the specification fails to provide "the structure that performs the

recited function."  G16.  But the requirement of identifying structure in the specification is the

second step of the mean-plus-function analysis that applies <u>only</u> "if the limitation is in means-

plus-function format."  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1296 (Fed. Cir. 2014).  "In

the first step, we must determine if the claim limitation is drafted in means-plus-function

format."  *Id*.  If it is not so drafted, "we do not reach the second step" that looks for structure in

the specification.  *Id*.  Moreover, "when a claim limitation lacks the term 'means,' it creates a

rebuttable presumption that Section 112, ¶ 6 does not apply."  *Id.* at 1297.  Therefore, because

the claims lack the term "means," the burden was on Google to present evidence to rebut the

presumption.  *Id*. at 1298.  Google bypassed the first step entirely and literally presented no

argument that "information gateway" is subject to section 112, ¶ 6.  G15-18.  Accordingly,

Google did not show that section 112, ¶ 6 applies, and that is the end of the inquiry.

Moreover, Google could not have overcome the presumption.  Google was required to

show that "gateway" is "a generic, structureless 'nonce word or a verbal construct' without any

meaning, such as 'mechanism,' 'means,' 'element,' or 'widget.'"  *Apple,* 757 F.3d at 1301;

*Lighting World, Inc. v. Birchwood Lighting, Inc*., 382 F.3d 1354, 1360 (Fed. Cir. 2004).  Google

was required to show that "gateway" has not "achieved recognition" in dictionaries "as a noun

denoting structure."  *Lighting World*, 382 F.3d at 1360-61; *Williamson v. Citrix Online, LLC*,

770 F.3d 1371, 1378 (Fed. Cir. 2014) ("The district court, in characterizing the word 'module' as

a mere nonce word, failed to appreciate that the word 'module' has a number of dictionary

meanings with structural connotations.").  Google could not have succeeded, because

dictionaries indisputably recognize "gateway" as a noun with structural connotations.

*Gateway:* "2. In a communications network, or multiple interconnected networks, a device or software which determines where packets, messages, or other signals travel to next." IEEE Press, *Wiley Electrical and Electronics Engineering Dictionary* 312 (2004).

*Gateway:* "A point of entry and exit to another system, such as the connection point between a local-area network and an external communications network." *McGraw-Hill Dictionary of Computing and Communications* 158 (2003)

Google's own expert opined that those of ordinary skill at the time would have understood "gateway" as a term connoting structure.  Ex. 38 (Wicker depo) at 32:14-‘23 ("a person of skill in the mid-‘90s would have understood a gateway to be an interface between two different kinds of networks").  A recent Federal Circuit claim construction decision reached the same conclusion.  *Starhome GmbH v. AT & T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014) ("The term 'gateway' had a well-understood meaning in the art [in the late '90s].  As evidenced by technical dictionaries, one of ordinary skill in the art would have understood a 'gateway' to be a connection between different networks."). [7]

Because Google cannot overcome the presumption, section 112, ¶6 does not apply and Google's indefiniteness argument fails.

***"assign addresses to data blocks"***: We explained that both parts of Google's construction are wrong.  SA17-18.  Google has no response.  The Court should rule that the phrase does not have the requirements of Google's unsupported, and now abandoned, construction.

## VI.     "a transmission gateway"

***Arg. 1***: "Since 'transmission gateway' is ***not a term of art*** and the ***specification never uses the term at all***, there are no relevant sources of information that define the term's scope." G19.

This argument depends on the following premise: *to be definite, a claim term must be*

---

[7] Moreover, even a generic term escapes application of section 112, ¶6 if the surrounding claim language and the specification disclose its operation, including its inputs, outputs, and how certain outputs are achieved.  *Apple*, 757 F.3d at 1301.  Here, the claims specify the inputs of the "information gateway" ("parsed data"), its outputs (addressed "data blocks"), and how the outputs are achieved ("build[ing] data blocks from the parsed data" and "assigning addresses to the data blocks").  '279 claim 1.  Moreover, the specification provides additional detail on all of the above.  '279 Figs. 2, 4, 6, 15; 8:62-9:17; 11:30-42; 22:13-21.

*either (a) a term of art or (b) used in the specification*.  This premise is false.  A claim is definite if "the claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2124 (2014).  Here, one of skill in the art would understand the term to have the meaning set forth in the Court's prior construction and therefore would understand the scope of the invention.  SA19-20  Google does not contend that this definition is indefinite.  Accordingly, in light of the intrinsic evidence, "transmission gateway" has an unambiguous meaning, and this argument fails.

**_Arg. 2_**: The "transmission gateway" is broader than the "wireless gateway" embodiment.  G19.

Google asserts that the specification discloses only one embodiment of "transmission gateway" (the "wireless gateway"), but the term is broader than that one embodiment, and, therefore, we are left to "'consult the unpredictable vagaries of any one person's opinion.'" G19-20 (quoting *Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1373 (Fed. Cir. 2014)). This argument is without merit.  Claims are often broader than the disclosed embodiments, and that does not imply ambiguity or uncertainty.  *See Cohesive Techs., Inc. v. Waters Corp.,* 543 F.3d 1351, 1360 (Fed. Cir. 2008).[8]  The intrinsic record supports SimpleAir's definition, and that definition does not depend on "unpredictable vagaries" of subjective opinion.

**_Arg. 3_**: "Like 'information gateway,' the 'transmission gateway' term amounts to purely functional claiming without any corresponding structure."  G20.

This argument fails for the same reason that Google's argument failed for "information gateway."  Google does not address step one of the mean-plus-function inquiry and presents no

---

[8] Contrary to Google's assertion, *Interval Licensing*, did not suggest that a claim term is indefinite if the specification includes only a single embodiment.  *Interval Licensing* addressed a term of degree—"unobtrusive manner"—that was "facially subjective" and therefore required an objective standard in the specification, 766 F.3d at 1370-71, 1373, which could not be met by pointing to "an example" in the specification.  *Id.* at 1374.  That has no applicability here because "transmission gateway" is not a subjective term of degree.

evidence or argument to overcome the presumption that section 112, ¶6 does not apply. [9]

## VII.   "communicatively coupled"

Google makes two indefiniteness arguments.[10]  We address them in turn.

_Arg. 1_: "[t]he phrase 'communicatively coupled' never appears in the specification."  G21.

A claimed phrase need not appear in the specification for it to be susceptible of definition based on the claim language itself, the specification, and the prosecution history. "Communicatively coupled" is such a phrase.[11]

_Arg. 2_: it is impossible for the "central broadcast server" to be "communicatively coupled" to the "information gateway."  G21-22.

Google asserts that (1) "to meet the claims' requirements, the CBS would have to be 'communicatively coupled' to part of itself"; and so (2) the term is indefinite because "a system cannot 'communicatively couple' to itself."  _Id._  Both assertions are wrong.  _First_, although the Figure 2 embodiment depicts the information gateway as a component of the central broadcast server, the claims are not limited this embodiment and do not have such a requirement.  _See_, _e.g._, '279 claim 1.  _Second_, to the extent the claims encompass an embodiment where the information gateway is a component of the central broadcast server, the two could still be communicatively coupled because a component of an apparatus can be communicatively coupled to the apparatus (a mouse and keyboard are each components of a computer system, and yet it makes perfect

---

[9] The term "gateway" connotes structure.  In addition, the term "transmission gateway" also connotes sufficient structure because the claims and the specification define its operations.  '279 claim 1 (inputs: "addressed data blocks"; output: "transmission of the addressed data blocks to receivers"; how achieved: "prepar[ing] the addressed data blocks for transmission"); '279 Figs. 2, 4, 5, 15; 9:14-55; 11:5-20; 22:22-36.

[10] Google also argues that SimpleAir's construction is unsupported because "SimpleAir's own extrinsic definitions of 'couple' make clear that the term requires a direct connection – not a mere association."  G22. SimpleAir's construction _is_ supported by the objective sources we quote and none of them requires a direct connection as Google asserts.  SA21 (quoting dictionary definitions).

[11] Both sides' experts agree that one of ordinary skill in the art would understand the meaning of "communicatively coupled" even without any assistance from the specification.  Ex. 38 (Wicker depo) at 76:20-77:4; 77:6-78:3; 80:17-25; Knox decl., ¶74-75.  The objective sources cited in our opening brief confirm this. SA21.  The specification itself discloses components that are "communicatively coupled," as Google's expert admitted.  Dkt. 76-4 at ¶106; ex. 38 (Wicker depo at 96:10-21).  Finally, in the recent prosecution history the patent holder expressly defined "communicatively coupled."  Ex. 34 ('279 IPR PR) at 15 (defining "communicatively coupled" to mean "connected or associated in a way that permits communication").

sense to say that each is communicatively coupled to the computer system). [12]

## VIII. "receivers"

Google asserts that the receiver must be "attached" to the remote computing device and then further interprets this to require the receiver and the remote computing devices to "be capable of independent function" and precluded them from being part of the same larger device. G23. Google has no response to our arguments that (1) the claims require the receiver and the remote computing device to be "communicatively coupled" not "attached," and (2) claim 29 of the '279 expressly recites that "the receiver and computing device form part of a consumer electronic device," thereby refuting Google's argument that a receiver or computing device cannot be subcomponents of a larger device. SA22-23. Google's arguments lack merit.

*Arg. 1*: "The claims require the receiver to be communicatively coupled to the remote computing device, and further require that the receiver receive data blocks from the transmission gateway."

This does not support Google's construction; it refutes it. The claims require the receiver to be "communicatively coupled"—not "attached"—to the remote computing device.

*Arg. 2*: "[T]he specification notes that by filtering incoming packets at the receiver … the filtered packets never reach the remote computing device. G24.

Claims are not limited to preferred embodiments, and Google identifies no definition or disclaimer. Moreover, filtering incoming packets does not require the receiver to be "attached" or "capable of independent function" and it can be performed by a receiver that is part of a larger device that also includes a remote computing device.[13]

---

[12] Google argues that "SimpleAir's construction makes 'communicatively coupled' meaningless" because it "imposes no meaningful bounds on the term." G22-23. Google is wrong. For example, components that are not connected or associated at all are not "communicatively coupled." Likewise, two components may be associated (e.g. by being within the same housing) but if they cannot communicate, they are not "communicatively coupled."

[13] Google also quotes a passage from the prosecution history describing a receiver that could "notify the computing device ... even when the computing device was off." G24. What Google omits is that this could not possibly be prosecution history disclaimer because it was not a statement (a) about claim scope, or (b) about limitations found in the '279 and '154 claims. It was (a) a description of one of the commercial embodiments of the '433 patent that was (b) submitted to establish an earlier priority date for a '433 claim limitation that required notifications when the computing device was "off" (*i.e.* not powered). Ex. 39 (Inventor Declaration) at 37-38.

IX.    **"whether said devices are online or offline from a data channel associated with [the/each] remote computing device"**

*Arg. 1*: "the specification provides no guidance."  G25-27.

This is false.  Both the claims and the specification provide substantial guidance.  *See* Ex. 4 (*Google I Markman*) at 13-14; 16-17; Knox Decl. ¶¶87-106.  Google asserts that we cited "only portions of the specification with no connection to 'data channel.'"  G27.  That is simply false.  All of the cited portions support the construction.[14]

*Arg. 2*: "SimpleAir's construction leaves the jury with no identification of which channel or path associated with the device matters for determining infringement" because "a data channel could be ... any connections [to] any information sources."  G26-27.

This is false.  The connection for determining whether a device is online or offline from an associated data channel must be a connection to a data channel to the information source that sent the data through the central broadcast server.  This is the interpretation of the claim construction that makes sense in the context of the whole claim, and it is how the parties and their experts in *Google I* consistently understood and applied the claim construction.

But now that Google is asserting otherwise, the Court should preclude a potential future dispute by adding the following italicized clarification to the end of the construction:

> "whether the remote computing devices are or are not connected via the Internet or another online service to a data channel associated with each computing device at the time the preprocessed data is received by the receivers, <u>wherein the data channel is for accessing information from the information source that sent the data</u>."

This addition is also consistent with the recent prosecution history, in which the patent holder made an unambiguous statement disavowing an alternative interpretation:

> "In light of the specification, this path or 'data channel' is not a path to an information source that is unrelated to the central broadcast server notification

---

Moreover, if a receiver had its own power source that would not require the receiver to be "attached" to a remote computing device; nor would it preclude the receiver and computing device from being part of a larger device.

[14] Nor does Google address the recent prosecution history statements that expressly defined this phrase and relied on the construction to distinguish prior art.  *See, e.g.,* ex. 26 ('914 CBM PR) at 53-57 (distinguishing prior art based on this); ex. 34 ('279 IPR PR) at 14 (defining the phrases); 42-51 (distinguishing prior art based on this).

system. Rather, it is a path for accessing information from the information source that sent the data through the central broadcast server."  Ex. 37 ('154 CBM PR), 13.

Moreover, it fits with the claim as a whole. The asserted claims recite transmitting data from an information source to a remote computing device.  '279 claim 1; '154 claim 1.  To accomplish this, data from an information source is received by a central broadcast server, processed, and ultimately transmitted to remote devices "whether online or offline from a data channel associated with each remote computing device."  *Id.*  The "online or offline" limitations have utility only because the central broadcast server provides data from an information source to a remote device even when the device is not online to that information source—it would not make sense to have data from an information source transmitted whether online or offline to a channel to an information source that is not the one that provided the data.[15]

## X.    "a viewer"

*"one or more applications or programs"*: Google asserts that "a service or window, for example, might be launched."  G28.  Both examples fail.  (1) "<u>service</u>": A service is a program. *Microsoft Press Computer Dictionary* 430 (3rd Ed. 1997) (*service*: "2. In reference to programming and software, a program or routine that provides support to other programs, particularly at a low (close to the hardware) level.") (2) "<u>window</u>": Both the claims and the specification make clear that the claimed "viewer" refers to computer software (*i.e.* a program or application)—not a window (*i.e.* part of a graphical display).  *See, e.g.,* '279 claim 28 (reciting "information concerning the installation, activation, deactivation, or updating" of viewers); *id.* 3:19-23 ("third party developers can write different types of multimedia viewers"); *id.* 28:63-64 ("Viewers **48** are capable of reading and displaying various message formats.").

---

[15] Furthermore, the specification discloses an embodiment of a data channel, connection 22, which is a path "<u>back</u> to the information source **12** for obtaining <u>detailed data</u>" related to the data received from the central broadcast server. *E.g.,* '279, 6:65-66.  This makes sense only if the data channel is a communication channel or path "<u>back</u>" <u>to the information source that provided the data received by the remote computing device through the central broadcast server</u>—not a path to an information source that is unrelated to the received data.

*"for viewing a category or subcategory of information"*: Our opening brief shows that viewers are for viewing a category or subcategory of information—not for viewing all information.  SA25.  Google's only response is that the specification discloses "email viewer" and "stock ticker viewer" embodiments (G28).  But as Google's expert admits, these embodiments *are* for viewing a category of information. Ex. 38 (Wicker depo) at 314:4-315:1.

## XI.    "subscriber database"

Google's construction of "subscriber database" is narrower than the term's ordinary meaning, as Google's expert admits.  Ex. 38 (Wicker depo) at 318:1-6; *id* 318:21-320:1.  And Google makes no attempt to identify a definition or a disavowal, and instead relies only on embodiments.  G29; ex. 38 at 320:2-8.  Google's narrowing construction should be rejected.

## XII.   prosecution history disclaimer

A patentee's adoption of a definition in a submission to the PTO during post-grant review proceedings constitutes disclaimer by express definition.  SA28.  As a result, the Court's prior constructions—which were submitted and adopted by SimpleAir in post-grant proceedings—are binding in this litigation.  *Id*.  In addition, SimpleAir recently submitted Preliminary Responses to four petitions for post-grant review filed by Google.  In these responses, SimpleAir expressly adopted the constructions that SimpleAir proposes in this litigation as express definitions and used them to distinguish prior art. [16]  Google's contrary arguments are without merit.

<u>***Arg. 1***</u>:  "A patentee cannot treat its own self-serving statements as binding on an accused infringer."  G29-30.

The use of prosecution history in claim construction is not a doctrine of one-way estoppel

---

[16] *See, e.g.*, ex. 34 ('279 IPR PR) at 14-15 (definitions); *id* at 35-40 (distinguishing the prior art based on the definition of "an information gateway"); *id.* at 41-42 (distinguishing the prior art based on the definition of "a transmission gateway"); 42-51 (distinguishing prior art based on the definition of the "online or offline" phrase); ex. 35 ('154 IPR PR) at 12-16 (definitions); *id.* at 32-33 (distinguishing prior art because "An information source is 'one or more content or on-line service providers that provide data to the central broadcast server'…But the "user's local news host" is does not provide information to … the central broadcast server"); ex. 36 ('279 CBM PR) (defining terms and distinguishing prior art on the basis of these definitions); ex. 37 ('154 CBM PR) (same).

against a party; it is a doctrine of claim interpretation.  "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1317 (Fed. Cir. 2005) (en banc).  Accordingly, the doctrine of prosecution history applies equally whether it supports the accused infringer's claim construction or the patent holder's.  *See 911EP v. Whelen Eng'g Co.,* 512 F. Supp. 2d 713, 719-20 (E.D. Tex. 2007).  Moreover, all of a patentee's statements in prosecution are self-serving for the patentee.  Thus, whenever a court invokes prosecution history disclaimer it is giving effect to a patentee's self-serving statement.

*Arg. 2*.  "Nothing in claim construction disclaimer prevents this Court from adopting a narrower construction."  G30.

That principle has no relevance here because we are not relying upon prosecution statements that assert a claim scope broader than the Court's prior constructions.  We are invoking it only for disclaimers of equal or narrow claim scope.

*Arg. 3*: "district courts use a narrower claim construction standard than the PTO" which uses the "broadest reasonable interpretation" standard.  G30.

The claim construction standard applied by the PTO is irrelevant because prosecution history disclaimer does not give effect to the PTO's construction of terms.[17]  *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys*., 381 F.3d 1111, 1124 (Fed. Cir. 2004) ("it is the applicant, not the examiner, who must give up or disclaim subject matter").  It gives effect to "a clear and unmistakable assertion by the patentee to the PTO of the meaning and scope of the term."  *Golden Bridge Tech., Inc. v. Apple Inc*., 758 F.3d 1362, 1366 (Fed. Cir. 2014).[18]

---

[17] The PTO applies the BRI standard upon initial review of an application. *In re Cuozzo Speed Technologies, LLC*, 2015 WL 448667, at \*6 (Fed. Cir. Feb. 4, 2015) ("This court has approved of the broadest reasonable interpretation standard in a variety of proceedings, including initial examinations … and post-grant proceedings").  Thus, all disclaimers arise in a proceeding where the PTO is applying its BRI standard.

[18] Google fails to address "contextual graphics."  The Court should adopt its prior construction.

Date: March 16, 2015                          Respectfully submitted,

By: */s/ Simon Franzini*

Simon Franzini
CA State Bar No. 287631
(admitted to practice before the U.S. District
Court for the Eastern District of Texas)

John Jeffrey Eichmann
CA State Bar No. 227472
(admitted to practice before the U.S. District
Court for the Eastern District of Texas)
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: 310-656-7066
Facsimile: 310-657-7069
Email: simon@dovellaw.com

S. Calvin Capshaw
State Bar No. 03783900
Email:  ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
State Bar No. 05770585
Email:  ederieux@capshawlaw.com
Capshaw DeRieux LLP
114 E. Commerce
Gladewater, Texas 75647
Telephone:  (903) 236-9800
Facsimile:  (903) 236-8787

ATTORNEYS FOR PLAINTIFF
SIMPLEAIR, INC.

## Certificate of Service

I certify that this document is being filed electronically and, as a result, is being served on counsel of record through the Electronic Filing System on the filing date listed above.

*/s/ Simon Franzini*
Simon Franzini

15