IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLEAIR, INC. | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:14-cv-00011-JRG |
| | § | |
| GOOGLE INC., ET AL., | § | |
| | § | |
|     *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment Under 35 U.S.C. § 101 (Dkt. No. 198) ("Mot.") filed by Defendants Google Inc. and Youtube LLC (collectively, "Defendants"). Plaintiff SimpleAir, Inc. ("SimpleAir") filed a Response in Opposition to the Motion (Dkt. No. 224) ("Resp.").[1] For at least the reasons stated below, the motion is **DENIED**.

### I.   Background

On January 8, 2014, SimpleAir filed suit against Defendants asserting claims of patent infringement of U.S. Patent Nos. 8,572,279 (the "'279 Patent") and 8,601,154 (the "'154 Patent") (collectively, the "Patents-in-Suit"). (Dkt. No. 1.) The Court held a *Markman* hearing on April 2, 2015, and issued a 70-page Claim Construction Order (Dkt. No. 107 ("Claim Construction Order")) on April 27, 2015. On April 24, 2015, Defendants filed this Motion for Summary Judgment Under 35 U.S.C. § 101. The Court heard oral argument from the parties on September 9, 2015.

---

[1] SimpleAir concluded its response by requesting that "SimpleAir . . . be granted summary judgment on Defendants' section 101 defense." (Resp. at 18.) The Court finds that, to the extent that two lines in SimpleAir's response can possibly be considered a cross-motion, SimpleAir failed to adhere to the Court's procedures with regard to filing summary judgment motions and thus, SimpleAir's request is untimely.

SimpleAir has asserted three independent claims from the Patents-in-Suit; to-wit: claims 1 and 35 of the '279 Patent and claim 1 of the '154 Patent. At a high level, the Patents-in-Suit are generally concerned with systems and methods for transmitting data to remote computing devices. The claim language itself is informative in this regard:

Claim 1 of the '279 Patent recites:

1. A system to transmit data from an information source to remote computing devices, the system comprising:

>  a central broadcast server configured to receive data from at least one information source and process the received data with at least one parser;

>  an information gateway communicatively coupled to the central broadcast server, the information gateway configured to build data blocks from the parsed data and assign addresses to the data blocks;

>  a transmission gateway communicatively coupled to one or both of the central broadcast server and the information gateway, the transmission gateway configured to prepare the addressed data blocks for transmission to receivers communicatively coupled to the remote computing devices and initiate transmission of the addressed data blocks to the receivers, wherein the transmission is made whether the remote computing devices are online or offline from a data channel associated with each remote computing device.

Claim 35 of the '279 Patent recites:

35. A system to transmit data from an information source to remote computing devices, the system comprising:

>  a central broadcast server configured to receive data from at least one information source and process the received data with at least one parser;

>an information gateway communicatively coupled to the central broadcast server, the information gateway configured to build data blocks from the parsed data and assign addresses to the data blocks;
>
>a transmission gateway communicatively coupled to one or both of the central broadcast server and the information gateway, the transmission gateway configured to prepare the addressed data blocks for transmission to receivers communicatively coupled with the remote computing devices and cause the addressed data blocks to be transmitted to the receivers;
>
>a plurality of remote computing devices configured to receive the addressed data blocks transmitted from the transmission gateway utilizing the receivers, wherein the remote computing devices are capable of being notified of the receipt of the transmitted data blocks by the receivers whether the remote computing devices are online or offline from a data channel associated with each remote computing device.

Claim 1 of the '154 Patent recites:

1. A method to transmit data from an information source via a central broadcast server to remote computing devices, the method comprising:

>(a) generating data at the information source, wherein the information source is associated with an online service relating to the generated data;
>
>(b) identifying one or more users that have subscribed to receive a notification relating to the generated data;
>
>(c) transmitting the generated data to a central broadcast server configured to process the generated data using at least one parser and transmit the processed data to receivers communicatively coupled with remote computing devices associated with subscribed users, wherein the central broadcast server:

>> (i) comprises one or more servers associated with a parser to parse the generated data received from the information source;
>
> (ii) is communicatively coupled to at least one information gateway, the information gateway configured to build data blocks from the parsed data and assign addresses to the data blocks; and
>
> (iii) is communicatively coupled to at least one transmission gateway, the transmission gateway configured to prepare the addressed data blocks for transmission to the receivers and configured to cause the addressed data blocks to be transmitted to the receivers, and wherein the transmission is made whether the remote computing devices are online or offline from a data channel associated with the remote computing devices.

## II.     LEGAL STANDARD

### A.     Summary Judgment Under Rule 56

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment must satisfy its initial burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

### B.     Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act defines what is eligible for patent protection. It says: "Whoever invents or discovers any new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility

under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court articulated a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714–15 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'").

For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit rejected as patent-ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as patent-ineligible a claim that contained steps "relat[ing]to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369.

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of a process that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1300 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps … that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional

functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes only "'post-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

### III.   DISCUSSION

In order to prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step ***and*** then also fail the "inventive concept" step of the *Alice* test.  In this case, Defendants contend the Patents-in-Suit fail both steps.

#### A.   *Alice* Step One: The Ineligible Concept Step

Defendants argue that the claims of the Patents-in-Suit are directed to the "abstract idea of packaging and transmitting information." (Mot. at 5.)   Defendants further argue that the Federal Circuit and numerous other courts have found the idea of "packing and transmitting information" to be an abstract idea under the Ineligible Concept Step of the *Alice* test.  (*Id.* at 6.) Defendants distinguish the claims of the Patents-in-Suit from the claims examined in *DDR Holdings* by arguing that the claims in this suit do not address a problem unique to the Internet. (*Id.* at 8.)

Plaintiff responds by arguing that the "summary [of the claim] must include the core features of the claim."   (Resp. at 5.)   Plaintiff also argues that the "text of the patent claims refutes Defendants' assertion [that the claims are directed to an abstract idea] because each claim includes key features that are ignored in Defendants' summary." (*Id.* at 6.)   Further, Plaintiff argues that "[a] person reading Defendants' summary would have no idea that the claimed inventions required a central broadcast server, associated data channels, or transmitting data to a remote computing device whether it is online or offline to a data channel." (*Id.*)

After consideration of all of the evidence and the arguments presented, the Court finds that the Patents-in-Suit are not directed toward an abstract idea, because they are directed toward patent-eligible methods and systems of "using a central broadcast server" to package and transmit "data from an online information source to remote computing devices." *See* (Resp. at 6.) Though Defendants argue that the Patents-in-Suit are directed to the abstract idea of "packaging and transmitting information," Defendants do not explain how such a characterization, which ignores significant claim limitations, encompasses the invention claimed by the Patents-in-Suit. *See* (Mot. at 5–7.) Such conclusory argument, without more, is not enough for Defendants to meet their burden of establishing that the Patents-in-Suit are directed to an abstract idea.

The Court does not disagree that the patented inventions, at some level, contain an implementation of the abstract idea of "packaging and transmitting information." However, every invention can be reduced to some form of an abstract idea. *See Alice*, 134 S. Ct. at 2354 ("At some level, 'all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"). The question before the Court, according to the Ineligible Concept Step of the *Alice* test, is not whether the Court is able reach into a patent and extract an abstract idea from which to determine patent-eligibility; such an exercise would render the Ineligible Concept Step a mere formality. Instead, the Court is directed to examine the Patents-in-Suit and to determine whether they are directed to an abstract idea. *See Alice*, 134 S. Ct. at 2355. After considering the arguments and the evidence in the record, the Court finds that the Patents-in-Suit are not directed to an abstract idea.[2]

---

[2] The Court notes that the Parties have raised a question of whether the statutory presumption of validity applies to the Section 101 inquiry. *See* (Resp. at 4; Reply in Support of Mot., Dkt. No. 235, at 16 n. 13.) The Court finds the answer to this question does not change its analysis in this case. Regardless of whether the presumption of validity

### B. *Alice* Step Two: The Inventive Concept Step

In addressing the Inventive Concept Step of the *Alice* test, Defendants argue that neither the "computerized steps" nor the "computer components" "save the claims from abstractness." *See* (Mot. at 11–12.) Defendants first argue that the "computerized steps" are "recited at high levels of generality with no specific computer programming" and can be "carried out using standard prior art protocols, carriers, and networks." *See* (*id*. at 12–13.) Defendants also argue that the "computer components" are merely "generic computer components," some of which are "defined in purely functional terms," and thus "cannot supply an inventive concept." *See* (*id*. at 13–15.)

Plaintiff responds by arguing the elements of "a central broadcast server," "a data channel," and "transmitting information whether the user was online or not online to a data channel to an information source" are "sufficient to ensure that the patent amounts to significantly more than 'processing and transmitting data.'" *See* (Resp. at 13.) Plaintiff also argues that Defendants have provided "no evidence that these elements are conventional, routine, or well-known at the time [the Patents-in-Suit were issued]." Finally, Plaintiff argues that "Defendants isolate half a dozen words from the claims rather than addressing the claim limitations as a whole and as an ordered combination." (Resp. at 15.)

Even assuming that the Court found that the patents are directed toward the abstract idea of "packaging and transmitting information," as Defendants propose, which it does not, the Court finds that the claim limitations are sufficient to ensure that the Patents-in-Suit amount to significantly more than a patent on that abstract idea. *See Alice*, 134 S. Ct. at 2355. For example, the claims require that transmission of the information occurs "whether the remote

---

applies, Defendants' conclusory arguments fail to persuade the Court that the Patents-in-Suit are ineligible under Section 101.

computing devices are online or offline from a data channel associated with [each/the] remote computing device[s]," which the Court has construed as meaning "whether the remote computing devices are or are not connected via the Internet or another online service to a data channel associated with each computing device at the time the addressed data block is received by the receivers, wherein the data channel is for accessing information from the information source that sent the data. A device is not online to an associated data channel merely because it is able to receive data transmissions (directly or indirectly) from the central broadcast server." (Claim Construction Order at 56–62.) At the very least, the Patents-in-Suit disclose particular solutions for the problem of the "[l]ack of notification of information delivery when offline" that "(1) [do] not foreclose other ways of solving the problem, and (2) recite[] a specific series of steps that result[] in a departure from the routine and conventional" way of managing digital rights. *See Internet Patents Corp. v. Active Network, Inc.*, No. 2014-1048, 2015 WL 3852975, at *6 (Fed. Cir. June 23, 2015); *see* (Resp. at 9.)

Further, the Court finds unavailing Defendants' argument that, because the "data-transmission steps can be carried out using standard prior art protocols, carriers, and networks," the "claimed invention [was] 'well-understood, routine, and purely conventional." *See* (Mot. at 12–13.) The Court is not asked to determine whether the steps or limitations can be performed or implemented using standard or well-known technologies, but rather whether "the function performed by the computer at each step of the process is '[p]urely conventional.'" *See Alice*, 134 S. Ct. at 2359.

## IV.    CONCLUSION

The Court finds that Defendants have failed to meet their burden to show that the Patents-in-Suit are directed toward an abstract idea and violate "'the longstanding rule that '[a]n idea of itself is not patentable.'" *See Alice*, 134 S. Ct. at 2355 (quoting *Gottschalk v. Benson*, 409 U.S.

10

63, 67, 93 S. Ct. 253, 34 L.Ed.2d 273 (1972)).  The Court further finds that, even if the Patents-in-Suit were directed to an abstract idea, Defendants have failed to meet their burden to show that the additional elements of the claims do not "transform the nature of the claim" into patent-eligible subject matter.  *See Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. 1298). Accordingly, Defendants' Motion for Summary Judgment Under 35 U.S.C. § 101 (Dkt. No. 198) is **DENIED**.

Further, SimpleAir's cross-motion for summary judgment on Defendants' Section 101 defense (Dkt. No. 224), to the extent it exists, is untimely and is **DENIED**.

**So ORDERED and SIGNED this 25th day of September, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE