IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLEAIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 2:14-cv-00011-JRG |
| v. | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GOOGLE INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SIMPLEAIR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:13-cv-00937-JRG |
| v. | ) | |
| | ) | |
| GOOGLE INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT GOOGLE INC.'S RULE 50(A) JMOL**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. SIMPLEAIR HAS FAILED TO PROVE INFRINGEMENT............................................1

    A. SimpleAir Has Failed To Prove Infringement of the "Addressed Data Blocks" Limitation..................................................................................................1

    B. SimpleAir Has Failed to Prove Infringement of the "Online or Offline" Limitation.................................................................................................................4

    C. SimpleAir Has Failed to Prove Infringement of the "Associated With" Limitation.................................................................................................................5

    D. SimpleAir Has Failed to Prove Infringement of the "Provide a Visual Alert" Limitation.....................................................................................................6

    E. SimpleAir Has Not Shown that Google is Liable for Infringement When Third-Party Application Providers Transmit Messages Via the Accused System.....................................................................................................................6

III. GOOGLE HAS PROVEN THAT ALL ASSERTED CLAIMS ARE ANTICIPATED OR RENDERED OBVIOUS BY THE BLITZMAIL SYSTEM.............7

IV. GOOGLE HAS PROVEN THAT CLAIMS 1, 3, 4, AND 8 ARE ANTICIPATED BY THE PALMER PATENT.........................................................................................8

V. CONCLUSION.....................................................................................................................9

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Bicon, Inc. v. Straumann Co.*,
　441 F.3d 945 (Fed. Cir. 2006) ............................................................................................... 3

*Black v. J.I. Case Co.*,
　22 F.3d 568 (5th Cir. 1994) ................................................................................................... 6

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
　672 F.3d 1270 (Fed. Cir. 2012) ............................................................................................. 3

*Glaros v. H.H. Robertson Co.*,
　797 F.2d 1564 (Fed. Cir. 1986) ............................................................................................. 6

*Sanofi-Aventis Deutschland GbmH v. Glanmark Pharms. Inc., USA*,
　748 F.3d 1354 (Fed. Cir. 2014) ............................................................................................. 7

### **Statutes**

Fed. R. Civ. P. 50(a) ..................................................................................................................... 1

I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(a), Defendant Google Inc. respectfully moves for judgment as a matter of law that SimpleAir has failed to prove infringement of any asserted patent claims. Google also respectfully moves for judgment as a matter of law that all asserted patent claims are invalid.

II.     SIMPLEAIR HAS FAILED TO PROVE INFRINGEMENT

   A.   SimpleAir Has Failed To Prove Infringement of the "Addressed Data Blocks" Limitation

Claim 1 of the '279 patent requires a "transmission gateway configured to *prepare the addressed data blocks for transmission* to receivers communicatively coupled to the remote computing devices and *initiate transmission of the addressed data blocks* to the receivers . . ."[1] There is no dispute that "the addressed data blocks" in the "transmission gateway" limitation finds its antecedent in the prior "information gateway" limitation, which recites an "information gateway configured to *build data blocks* from the parsed data and *assign addresses to the data blocks*." (10.8.15 a.m. Trial Tr. at 108:21-109:3 (Knox testimony).)

It is also undisputed that the accused "addresses" are *not* in the alleged "addressed data blocks" transmitted by the component SimpleAir accuses of meeting the "transmission gateway" component, the Mobile Connection Servers (MCS). SimpleAir's expert, Dr. Knox, alleges that the "assign addresses to the data blocks" limitation is met when the GCM backend sends data to a particular MCS. (10.8.15 a.m. Trial Tr. at 7:22-8:22.) But the patent claims require transmission of "the addressed data blocks." As the evidence showed, the MCS address allegedly assigned by the GCM backend (the accused "information gateway") is not transmitted by the MCS (the

---

[1] The remaining asserted claims — claims 3, 4, 6, 7, 8, and 9 — all depend from claim 1, either directly or indirectly.

accused "transmission gateway") when the MCS server transmits the accused "blocks" to the Android device. Indeed, testimony from Google's technical expert was unchallenged on this point (10.9.15 p.m. Trial Tr. at 117:14-23), and SimpleAir's counsel tacitly admitted that these assigned MCS addresses are *not* in the data blocks when they are transmitted. (10.8.15 a.m. Trial Tr. at 32:2-4 ("Now, if the Google system doesn't send the MCS address down with the data to the phone, how is that data – how did that message end up getting to the phone?"))

In the face of this evidence, SimpleAir posits that the "addresses" assigned in the "assign addresses to the data blocks" limitation do not need to be in the "addressed data blocks" at all. (*Id.* at 29:16-30:9, 31:22-32:1; *see also id.* at 110:5-9 ("Q: The word 'addressed' in this transmission gateway section where it says 'the addressed data blocks,' those refer to the addresses assigned to the data blocks in the information gateway, yes or no? A: No.").) This theory is the linchpin of SimpleAir's infringement case for the "addressed data blocks" limitation.

SimpleAir is incorrect. The "addressed data block" limitation requires that the data block is still "addressed" when it is transmitted, with the same "address" assigned in the prior "assign addresses to the data blocks" limitation. Put simply, both "addressed" and "data" are adjectives modifying the noun "block." Thus, the "addressed data block" must include both the "address" and the "data." A "block" that includes data but not an address is simply a "data block" — not the "addressed data block" required by the claims. There is no dispute that the accused "data block" contains no such "address," and SimpleAir's infringement theory thus fails as a matter of law.

In an attempt to revive SimpleAir's infringement theory, Dr. Knox argues that the phrase "addressed data blocks" only requires data blocks to which addresses had been previously added at some point in the past. (*See id.* at 113:18-21: "lots of data blocks in a computer, lots of data blocks. But only certain ones are the ones *to which we had previously assigned addresses*. Those

are the ones that are being talked about under transmission gateway.") But this argument — *i.e.*, that a data block is "addressed" as long as an address had been added at some point in the past — is untenable as a matter of basic grammar. Consider, for example, the phrase "a red apple," which Dr. Knox agreed is in the same adjective + noun form as "addressed data blocks." (*Id.* at 112:20-113:5.) As Dr. Knox admitted, "a red apple" must *presently* be red. (*Id.*) No one would say that a green apple, a yellow apple, or a purple apple is a "red apple" as long as it *was* red at some point in the past. Likewise, "the addressed data blocks" in the claims are not "addressed" unless they *presently* include the antecedent "addresses" that were assigned in the prior "assign addresses to the data blocks" limitation.

SimpleAir argues that "the addressed" merely provides antecedent to "data blocks," *i.e.*, it merely refers to the "data blocks" that were "addressed" in the "information gateway" limitation. (*Id.* at 110:5-21.) But this argument renders "addressed" superfluous and is thus incorrect as a matter of law. "The" — *and "the" alone* — provides antecedent to the "data blocks" created and addressed in the "information gateway" limitation. *Cf. Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 954 (Fed. Cir. 2006) ("'the abutment' of limitation [e] refers to the particular abutment described [earlier in] the claim.") By reciting "the *addressed* data blocks" in the "transmission gateway" limitation, the claims further require that those data blocks include an address. Under SimpleAir's and Dr. Knox's reading of the claims, the word "addressed" in "the addressed data blocks" adds nothing at all, as the claims would have the same scope as if the "transmission gateway" limitation simply recited "the data blocks." Because "claims are interpreted with an eye toward giving effect to *all* terms in the claim," SimpleAir's theory is incorrect. *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012) (emphasis added).

In sum, the word "addressed" should be given effect — as the adjective that it is — to require "blocks" including the antecedent "addresses" and "data" referenced in the "information gateway" limitation. Because SimpleAir has introduced no evidence that this is the case in the accused system, SimpleAir has failed to show that the accused system meets the "addressed data blocks" limitation.

### B. SimpleAir Has Failed to Prove Infringement of the "Online or Offline" Limitation

All asserted claims require "remote computing devices," and further contain the limitation "wherein the transmission is made whether the remote computing devices are online or offline from a data channel associated with each remote computing device." For the "remote computing device" limitations, SimpleAir accuses the Central Processing Unit (CPU) *within* the accused Android phones — *not* the phones themselves. (10.7.15 Trial Tr. at 107:7-18; 10.8.15 a.m. Trial Tr. at 74:3-9.)

As a result, SimpleAir has a fatal failure of proof on the limitation "wherein the transmission is made whether the remote computing devices are online or offline from a data channel associated with each remote computing device." SimpleAir introduced no evidence that the accused CPU can be "online or offline from a data channel." To the contrary, Dr. Knox admitted that a CPU cannot get online "without all the infrastructure around it." (10.8.15 a.m. Trial Tr. at 88:6-11; *see generally id.* at 86:23-88:11.) So it is the CPU plus all supporting infrastructure *of the Android phone as a whole* that can be "online" or "offline." The CPU itself cannot be online or offline, any more than could any other discrete component within the Android phone. For example, no reasonable jury could find that the phone's battery, RAM, or antenna in isolation could be online, despite all those components being necessary for the phone as a whole to connect to an information source. Similarly, no reasonable jury could find that a CPU alone could

be online. (*See also* 10.8.15 a.m. Trial Tr. at 88:13-19 (Dr. Knox admitting that under the ordinary meaning of the term, one wouldn't refer to performing various online activities with the CPU).)

      C.     **SimpleAir Has Failed to Prove Infringement of the "Associated With" Limitation**

As noted above, all asserted claims require the limitation "wherein the transmission is made whether the remote computing devices are online or offline from a data channel associated with each remote computing device." SimpleAir has a fatal failure of proof for the "associated with" aspect of this limitation, because SimpleAir has made no showing that its alleged data channels are "associated with" the CPU (which, again, is the accused "remote computing device.")

SimpleAir alleges that the "associated with" language is satisfied if a given Android phone user has an application ("app") from an application provider installed on the user's Android phone. (10.8.15 a.m. Trial Tr. at 22:9-20, 89:15-19.) For example, Dr. Knox agreed with Google's counsel that "when you're measuring whether this association is met, you are looking at whether there's an app on the phone." (*Id.* at 89:24-25; *see also id.* at 90:2 ("yes, that is correct."); *accord id.* at 91:3-5 ("Q: And that association requires the app is installed on the phone, right? A: That's correct.").)

But even if this were sufficient to show that that the accused data channel is "associated with" the phone as a whole, it is insufficient to show that the accused data channel is "associated with" the accused "remote computing device": the phone's CPU. For example, Dr. Knox admitted that apps are stored in the phone's non-volatile memory, ***not*** on the CPU. (*Id.* at 92:9-24.) Accordingly, replacing the CPU on the phone has no effect on the applications. (10.9.15 p.m. Trial Tr. at 105:20 to 106:10.) Thus, under SimpleAir's infringement theory, the accused data channel might be "associated with" the phone as a whole, and might even be "associated with" the memory where the applications resides. But no reasonable jury could find that it is "associated

with" *other* discrete components of the phone, such as the screen, camera, audio jack, battery — or CPU.

### D. SimpleAir Has Failed to Prove Infringement of the "Provide a Visual Alert" Limitation

SimpleAir has also failed to prove infringement of the claim 9 limitation requiring that "the remote computing devices are configured to provide a visual alert to notify users . . ." SimpleAir has never alleged that the CPU itself can provide a visual alert to a user. Instead, SimpleAir's infringement theory is that the CPU "causes" a different phone component — the screen — to visually alert the user. (10.8.15 a.m. Trial Tr. at 50:22-51:4, 116:1-4.) But claim 9 requires that the "remote computing device" itself "provide a visual alert," not that it "cause" some other component to do so. Accordingly, because SimpleAir alleges that only the CPU — and not the entire phone — is the claimed "remote computing device," SimpleAir has failed to show infringement of claim 9.

### E. SimpleAir Has Not Shown that Google is Liable for Infringement When Third-Party Application Providers Transmit Messages Via the Accused System

As explained in Google's Summary Judgement Motion on Third-Party Information Sources (Dkt. 199) and Google's Rely Brief in support of that Motion (Dkt. 240), Google cannot be liable for infringement when third-party application providers transmit messages via Google's accused system. Google understands that the Court denied Google's summary judgment motion on this issue, but Google respectfully re-asserts its summary judgment arguments at this JMOL stage in order to preserve the issue for appeal. *See Black v. J.I. Case Co.*, 22 F.3d 568, 570 (5th Cir. 1994) ("this Court will not review the pretrial denial of a motion for summary judgment where on the basis of a subsequent full trial on the merits final judgment is entered adverse to the movant."); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed. Cir. 1986) ("a denial of summary judgment is not properly reviewable on an appeal from the final judgment entered after trial.")

### III. GOOGLE HAS PROVEN THAT ALL ASSERTED CLAIMS ARE ANTICIPATED OR RENDERED OBVIOUS BY THE BLITZMAIL SYSTEM

Google has proven by clear and convincing evidence that asserted claims 1, 6, 7, 8, and 9 are anticipated by the BlitzMail system, and that asserted claims 3 and 4 are obvious over BlitzMail. Google's invalidity expert Dr. Schonfeld testified how BlitzMail disclosed every element of claims 1, 6, 7, 8, and 9. (10.09.15 a.m. Trial Tr. at 119:5-155:9.) The functionality of BlitzMail is further proven by the testimony of percipient witnesses James Matthews (*id.* at 6:4-63:14), David Gelhar (*id.* at 66:4-78:12), and Stephen Campbell (*id.* at 79:5-94:14.) Additionally, the functionality of BlitzMail is proven by the following Exhibits: D681, D682, D664, and D669. In light of this evidence and testimony, no reasonable jury could fail to find that BlitzMail anticipates claims 1, 6, 7, 8, and 9, or that BlitzMail renders obvious claims 3 and 4 when combined with the background knowledge and skill of an ordinary skilled artisan.

Dr. Schonfeld further testified how it would have been obvious to one of ordinary skill to modify BlitzMail to meet the limitations of claims 3 and 4. (10.09.15 a.m. Trial Tr. at 143:4-145:24.) Obviousness in a question of law, based on underlying facts. *Sanofi-Aventis Deutschland GbmH v. Glanmark Pharms. Inc., USA*, 748 F.3d 1354, 1358 (Fed. Cir. 2014). "The factual components include the scope and content of the prior art, the differences between the prior art and the claimed invention, the level of skill in the art, and any objective evidence of nonobviousness." *Id.* Applying these factors, claims 3 and 4 are obvious as a matter of law over BlitzMail.

As to the scope and content of the prior art, Dr. Schonfeld testified how all claim elements (save the dependent elements added by claims 3-4) are present in BlitzMail. Additionally, Dr. Schonfeld and fact witness Baldev Krishan have shown that most of the claim elements as construed by the Court were well-known in the art, including pager receivers, information sources, remote computing devices, data transmission between information sources and remote computing

devices, data blocks and addressing data blocks, parsing, wireless data transmission, and sending notifications whether the remote computing devices are online or offline from a data channel associated with each remote computing device. (10.8.15 p.m. Trial Tr. at 104:25-116:8; 10.09.15 a.m. Trial Tr. at 103:6-114:22.) The state of the art is further shown by the following Exhibits: D648, D651, D804, and D696. SimpleAir principal Tim Von Kaenel likewise admitted that a great many of the claim elements were well-known in the prior art. (10.8.15 p.m. Trial Tr. at 50:3-52:22.)

As to differences between the claims and the art, Dr. Schonfeld testified how there are virtually no differences between claims 3-4 and BlitzMail. (10.09.15 a.m. Trial Tr. at 143:4-145:24). As to the level of ordinary skill in the art, Dr. Schonfeld explained how an ordinarily-skilled artisan would have a Bachelor's of Science in electrical engineering, computer science or computer engineering plus two years of relevant work experience, or a Master's of Science in those fields plus one year of relevant work experience. (10.09.15 a.m. Trial Tr. at 102:6-103:5.) Given the disclosures of BlitzMail, combined with the fact that the overwhelming majority of claim elements were well-known in the prior art, a person of ordinary skill would have found claims 3 and 4 obvious as a matter of law.

Finally, as Dr. Schonfeld explained, there are no secondary considerations to dislodge the strong *prima facie* obviousness showing. (10.09.15 a.m. Trial Tr. at 165:3-167:17.).

### IV.  GOOGLE HAS PROVEN THAT CLAIMS 1, 3, 4, AND 8 ARE ANTICIPATED BY THE PALMER PATENT

Google has proven by clear and convincing evidence that claims 1, 3, 4, and 8 are anticipated by the Palmer patent, and no reasonable jury could find otherwise. Dr. Schonfeld testified how Palmer disclosed every element of claims 1, 3, 4, and 8, and how the portions of Palmer that Dr. Schonfeld relies on are entitled to the priority date of Palmer's provisional

application (which pre-dates the '279 Patent's priority date). (10.09.15 a.m. Trial Tr. at 155:10-165:2.) The functionality of Palmer is further proven by Exhibit D656. In light of this evidence and testimony, no reasonable jury could fail to find that Palmer anticipates claims 1, 3, 4, and 8.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant the foregoing motion for judgment as a matter of law.[2]

DATED: October 11, 2015

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Michelle Ann Clark

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven
 charlesverhoeven@quinnemanuel.com
Michelle A. Clark
 michelleclark@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600

---

[2] Google also respectfully submits that all asserted claims are patent-ineligible under Section 101, for the reasons set forth in Google Section 101 summary judgment briefing (Dkts. 198, 235). Google also respectfully submits that all asserted claims are indefinite under 35 U.S.C. § 112 because there is no reasonable certainty as to meaning of the "information gateway," "transmission gateway," "communicatively coupled," and "online or offline from a data channel" limitations, for the reasons set forth in Google's Markman briefs (Dkts. 76 and 87). Finally, Google respectfully renews its objections to all claim construction disputes that it lost before this Court.

Facsimile: (415) 875-6700

Patrick D. Curran
  patrickcurran@quinnemanuel.com
51 Madison Avenue, 22nd Floor,
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Michael D. Powell
  mikepowell@quinnemanuel.com
555 Twin Dolphin Dr.,
Redwood City, CA 94065
Telephone: (650) 801-5000
Facsimile: (650)801-5100

Joshua L. Sohn
  joshuasohn@quinnemanuel.com
777 6th St. NW, 11th Floor
Washington, D.C. 20001
Telephone:  (202) 538-8175
Facsimile:  (202) 538-8100

*Attorneys for Defendants Google Inc. and YouTube, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on October 11, 2015.

                                      */s/ Michael D. Powell*
                                      Michael D. Powell